UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A D CHRISTIAN,

        Plaintiff,

v.

ENHANCED RECOVERY
COMPANY, LLC,

        Defendant.
_____/

**Complaint**

**I.   Introduction**

1.    This is an action for damages, brought by a consumer against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

**II.   Jurisdiction**

2.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

**III.   Parties**

3.    Plaintiff A D Christian is an unmarried, adult, natural person residing in Kent County, Michigan. Mr. Christian is a "consumer" and "person" as the terms are defined and/or used in the FDCPA. Mr. Christian is a "consumer," "debtor" and "person" as the terms are

1

defined and/or used in the MOC.

4. Defendant Enhanced Recovery Company, LLC ("ERC") is a Delaware limited liability company, with offices at 8014 Bayberry Road, Jacksonville, Florida 32256. The registered agent for ERC in Michigan is Capitol Corporate Services, Inc., 712 Abbott Road, East Lansing, Michigan 48823. ERC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ERC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ERC is a "debt collector" as the term is defined and/or used in the FDCPA. ERC is qualified to do business in Michigan for the stated purpose of "Third party debt collections via interstate commerce." ERC is licensed (No. 2401002129) by the State of Michigan to collect delinquent consumer debts in Michigan. ERC is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

## IV. Facts

5. Mr. Christian had a credit account with Sprint Nextel ("Sprint") which he used to purchase goods and/or services for personal, family and household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA and MOC.

6. Mr. Christian disputes the alleged debt.

7. Mr. Christian refuses to pay the alleged debt.

8. In or about May or June of 2012, ERC used an automated dialing system to place one or more telephone calls to a telephone number belonging to Mr. Christian's sister and used a pre-recorded and/or computer generated voice to leave the following message on a telephone answering machine used by Mr. Christian's sister and mother: "Hello. This message is for A D

Christian. If you are not this person please delete this message as it is not for you. This is Bob with Enhanced Recovery Company. We're a collection agency intending to collect a debt and any information obtained will be used for that purpose. Please contact me about this business matter at 800-459-3186 or visit www.payerc.com and provide the following reference number: 56146686."

9. ERC placed the described telephone calls to the telephone number belonging to Mr. Christian's sister and left the described messages on the telephone answering machine used by Mr. Christian's sister and mother for the purpose of attempting to collect an alleged debt from Mr. Christian.

10. The only reason ERC placed the described telephone calls to the telephone number belonging to Mr. Christian's sister and left the described messages on the telephone answering machine used by Mr. Christian's sister and mother was in connection with efforts by ERC to collect an alleged debt from Mr. Christian.

11. Mr. Christian's mother heard the messages left by ERC on the telephone answering machine shared by Mr. Christian's sister and mother.

12. ERC communicated to Mr. Christian's mother that ERC was attempting to collect a debt from Mr. Christian.

13. Mr. Christian's mother communicated to Mr. Christian that ERC had left a message on the telephone answering machine shared by Mr. Christian's sister and mother, stating that ERC was attempting to collect a debt from Mr. Christian.

14. ERC communicated information regarding the alleged debt directly and indirectly to Mr. Christian.

15. ERC communicated information regarding the alleged debt directly and indirectly to Mr. Christian's mother.

16. ERC did not obtain the prior consent of Mr. Christian to communicate with Mr. Christian's mother in connection with the collection of the alleged debt.

17. ERC did not obtain the prior consent of Mr. Christian to communicate to Mr. Christian's mother that ERC was attempting to collect a debt from Mr. Christian.

18. Mr. Christian has never given ERC permission to speak with Mr. Christian's mother regarding the alleged debt.

19. A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer. 15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

20. The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

21. A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt. 15 U.S.C. § 1692b(2).

22. The FDCPA states that a debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall, "only if expressly requested, identify his employer." 15 U.S.C. § 1692b(1).

23. ERC disclosed the name of its company in the message ERC delivered to Mr. Christian's mother, without an express request for such information by Mr. Christian's mother, violating the FDCPA.

24. Nothing in the law entitled ERC to use an automated dialing system to place a telephone call to a telephone number belonging to Mr. Christian's sister and use a pre-recorded and/or computer generated voice to leave a message for Mr. Christian on a telephone answering machine shared by Mr. Christian's sister and mother, without regard to whether the message might by heard by someone other than Mr. Christian.

25. ERC could have used other methods to communicate with Mr. Christian.

26. ERC could have chosen to communicate with Mr. Christian by postal mail.

27. ERC could have chosen to communicate with Mr. Christian by speaking directly to Mr. Christian by telephone.

28. ERC could have chosen not to use an automated dialing system to place a telephone call to a telephone number and use a pre-recorded and/or computer generated voice to disclose that ERC was attempting to collect a debt from Mr. Christian.

29. ERC could have chosen to have a live person make the telephone call to Mr. Christian and then use discretion regarding whether to deliver a message for Mr. Christian. Instead, to save money and increase its profits, ERC chose to use an auto-dialer to indiscriminately place telephone calls and leave pre-recorded and/or computer generated messages on telephone answering machines, without regard for the privacy of consumers such as Mr. Christian and without regard for the requirements of the FDCPA.

30. ERC violated 15 U.S.C. § 1692c(b) by leaving a recorded message on a voice mail, which resulted in a communication to Mr. Christian's mother that ERC was attempting to collect an alleged debt from Mr. Christian. *Berg v. Merchants Association Collection Division, Inc.*, 586 F.Supp. 1336 (S.D. Fla. 2008).

5

31. ERC is a member of ACA International ("ACA").

32. ACA is a trade group for debt collectors. ACA has sent multiple writings to its members, including ERC, warning about the risks associated with violating the FDCPA by leaving a message on an answering machine or voice mail that could result in an unlawful disclosure to a third party that a consumer allegedly owes a debt.

33. ERC knowingly assumed the risk of violating the FDCPA by delivering a message stating that ERC was calling to collect a debt, knowing that the message might be heard by someone other than Mr. Christian.

34. ERC in the pre-recorded and/or computer generated message left for Mr. Christian on the telephone answering machine shared by Mr. Christian's sister and mother, warned others not to listen to the message, establishing that ERC recognized the likelihood that someone other than Mr. Christian might hear the message.

35. ERC knowingly assumed the risk of violating the FDCPA by leaving a message on an answering machine, stating that ERC was calling to collect a debt from Mr. Christian, while realizing that the message might be heard by someone other than Mr. Christian.

36. It was unrealistic for ERC to assume that someone such as Mr. Christian's mother would obey ERC's command to "delete" a message left from her son without listening to the full message.

37. The message left by ERC on the telephone answering machine shared by Mr. Christian's sister and mother warned the listener to "delete" the message if the listener was not Mr. Christian. However, the message did not instruct the listener to delete the message before listening to the entire message. Moreover, the only way for the listener to obtain sufficient

6

information for the purpose of making ERC stop calling was to listen to the entire message.

38. On August 5, 2011, Mr. Christian filed a lawsuit against ERC in the United States District Court for the Western District of Michigan, Case No. 1:11-cv-816, alleging in the complaint that ERC had placed telephone calls to a telephone number belonging to Mr. Christian's mother and left messages on an answering machine which were heard by Mr. Christian's mother, and which disclosed that ERC was attempting to collect an alleged debt from Mr. Christian.

39. In August of 2011, ERC's registered agent was served with summons and complaint in Case No. 1:11-cv-816.

40. In August of 2011, Mr. Christian and ERC agreed to settle Case No. 1:11-cv-816.

41. On August 19, 2011, Mr. Christian filed a Notice of Dismissal of Case No. 1:11-cv-816.

42. The telephone number ERC called in connection with Case No. 1:11-cv-816 was the very same telephone number that ERC called in connection with this lawsuit.

43. ERC had actual knowledge (having been sued in Case No. 1:11-cv-816), that as recently as August of 2011, telephone calls placed to the telephone number ERC called in May or June of 2012 were sometimes answered by a telephone answering machine that was shared and used by Mr. Christian's mother. Despite that knowledge, in May or June of 2012, ERC again called the number and left a message for Mr. Christian which unlawfully disclosed to Mr. Christian's mother that ERC was attempting to collect an alleged debt from Mr. Christian.

44. ERC intentionally called the telephone number described above.

45. ERC did not maintain procedures reasonably adapted to avoid the above-

described violations of the FDCPA.

46. Even if ERC did maintain procedures reasonably adapted to avoid the above-described violations of the FDCPA, ERC failed to follow those procedures.

47. ERC failed to maintain procedures reasonably adapted to avoid disclosing to a third party that a consumer owed a debt. Instead, ERC left a recorded message for a consumer on an answering machine, knowing it was possible that the message might be heard by someone other than the consumer.

48. ERC failed to maintain procedures reasonably adapted to avoid disclosing to a third party that Mr. Christian owed an alleged debt. Instead, ERC left a recorded message for Mr. Christian on a telephone answering machine, knowing that it was possible that the message might be heard by someone other than Mr. Christian.

49. ERC scripted and intended to speak the pre-recorded and/or computer generated words that were spoke by ERC when delivering the above-described message that was heard by Mr. Christian's mother in connection with ERC's efforts to collect an alleged debt from Mr. Christian.

50. ERC has been sued multiple times for allegedly violating the FDCPA by using an automated dialing system to place a telephone call and using a pre-recorded and/or computer generated voice to deliver a message for a consumer in efforts to collect a debt which resulted in an unlawful disclosure to a third party that ERC was attempting to collect a debt from the consumer. Despite those lawsuits, ERC has made the business decision to continue to engage in debt collection practices that ERC knows will from time to time violate the law.

51. The acts and omissions of ERC and its employees done in connection with efforts

to collect a debt from Mr. Christian were done intentionally and wilfully.

52. ERC and its employees intentionally and wilfully violated the FDCPA and MOC.

53. On June 21, 2012, Mr. Christian sent a letter by certified mail to ERC, demanding that ERC immediately cease communicating to third parties that Mr. Christian allegedly owes a debt.

54. As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, humiliation and suffering for which he should be compensated in an amount to be established by jury and at trial.

V. **Claims for Relief**

### Count 1– Fair Debt Collection Practices Act

55. Plaintiff incorporates the foregoing paragraphs by reference.

56. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

    a) Defendant violated 15 U.S.C. § 1692b;

    b) Defendant violated 15 U.S.C. § 1692c;

    c) Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt; and

    d) Defendant violated 15 U.S.C. § 1692f by using unfair and uERCnscionable means to collect or attempt to collect a debt from plaintiff.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such further relief as the court deems just and proper.

### Count 2 – Michigan Occupational Code

57. Plaintiff incorporates the foregoing paragraphs by reference.

58. Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 339.915(m) by bringing to public notice that the consumer is a debtor;

b) Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

c) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

d) Defendant violated M.C.L. § 339.919.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

c) Statutory damages pursuant to M.C.L. § 339.916(2);

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2); and

e) Equitable relief pursuant to M.C.L. § 339.916(1).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: June 21, 2012

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com